Good morning, Your Honor. Blythe Bach, appearing on behalf of the appellants. In this appeal, it's actually a rather narrow issue to address today. And the issue is specifically whether or not the police officers should be entitled to qualified immunity for asking the Sanchez family to wait outside while they conducted their probation search. Now, the district court below found, first of all, that that was a detention. We believe it was not a detention. The Sanchez family was asked to wait outside. They were completely unguarded. They were. Were they handcuffed? Excuse me. Were they handcuffed? No, they were not. They were waiting. They waited outside by the worst-case scenario, according to Eva Sanchez. She said 15 to 20 minutes while the probation search was conducted. We believe that that was not even a detention. Can I ask you a question? Yes. This is what bothers me about these. And this isn't the first case that I've sat on where you have a similar set of facts. They're going to make these parole arrests. And they go by, and I think what happened here, they didn't talk to his parole officer. They just talked to someone in the office and said, yeah, he's on parole. But never to the parole officer. I don't know that anything else. Maybe they checked, I don't know, they checked Water and Power or the telephone company. Or they checked the county jail. He's not in the county jail, right? Okay. Nobody checked the state prison. That's easy to do. And when they went into the house, when they went into the house, these ladies came out, these women. There was one woman that was seriously ill with cancer, too. They wake up the family. How old was this little kid that came to the door? Four or five years old? Four. Four-year-old boy. They come in there, what, at seven in the morning. And they had two Spanish-speaking officers with them. And the women told him, you know, he's not here. You know, he's in prison. They told him twice. And they didn't check on that. They just sent him outside. Got a little boy there that's frightened. Probably never forget that incident as long as he lives. I wouldn't forget it if I were four and had these eight police officers coming in. They don't even make a reasonable attempt to confirm that the person they're looking for is living there, is still there. And I think they did have some information, but it was, like, months old. Well, actually, it is undisputed that Oscar was living there and that that was his approved probation residence. But only the two women said he's not here. He doesn't live here. He's in state prison. They could have stopped right then and there, huh? They could have stopped right then and there and made a call. Well, I need to find out that he's in state prison. Well, I understand that. First off, Your Honor. Why wasn't that done? I would first like to say that for purposes of this appeal, since Judge Collins specifically found probable cause to enter the house and to conduct the probation search, notwithstanding the mistake, she found that that mistake was reasonable and that the officers were entitled to qualified immunity for that. So the narrow issue today is not whether or not the standard of review for qualified immunity or not. Excuse me. On her finding that they had cause to enter the house. There is no review here, because this is a very narrow appeal specifically on the denial of qualified immunity. Based on the seizure. Correct. For the detention. Not on entering the house, not on conducting the probation search. In fact, she's already ruled on that. Correct. And, in fact, in their answering brief, the appellees conceded that that's not an issue. The only narrow issue today is whether or not when these police officers are conducting an otherwise valid and legal probation search, are they entitled to tell the residents of the house to leave so that they can conduct their search? Well, let's assume this is a detention. Then what's your argument? Well, then the next step is, and this is an error that was made below, which is that the judge found a detention but didn't go to the next step, which is whether or not that detention was unconstitutional. To answer that question, you look at the government interest. Not every detention is illegal. And the police, you look at what are the government interests. Well, the judge seemed to think it made a difference whether there was a search warrant or not. I have some difficulty understanding that. And I do, too. Our position is that there's absolutely no difference. And there's no, the difference for that was the plaintiff's burden to present some kind of law, some kind of legal authority that would have instructed these officers. Well, there is a difference. You know, if you get a search warrant, you've got a state probable cause. And the judge looks at it. And the judge will say, well, you know, okay, now what have you checked? Well, we called the, we see, we checked he's not in the county jail. All right. Did you talk to his parole officer? No. Didn't talk to his parole officer. That's the one who would know. How many parole officers do we have in Los Angeles? Hundreds of them, don't we? Huh? So he talked to somebody in that office. You know, I mean, this goes, this is a common thing. All I've got to do is make that little effort, that little effort to make sure, you know, that this person isn't in state prison, particularly when these two women told them twice in Spanish, they've got Spanish-speaking officers. But they come in there like storm troopers, you know. They don't care about these people's rights or frightening these little kids. And all I've got to do is make one phone call. Or they should have done it before they even went in there. When the police officers were told by the residents that he's in prison, I think that the Motley case addresses that issue. He's in state prison. He's in state prison. Yeah. The officers did have the right and actually the duty to make sure that that was correct. And what they did was they checked the house. And as soon as they were given the letter from Oscar from prison, they left. That's undisputed. Even the plaintiffs say that. Well, why don't they check it to begin with? But that is an error. It is a mistake that was made. But it's going on all the time. And you're the, you know, the city attorney is the attorney for the police department, right? I'm trying to answer for this specific appeal. No, no. I'm looking at the broader picture here. Because this is a common thing that happens in this city in which I was born. And I'm concerned about things like that. All you're doing is antagonizing the population. You think these people are ever going to forget, you know, this little boy is ever going to forget that, you know, eight police officers came in his house at 7 o'clock and they had to take his aunt, who was dying of cancer, and they were going to take her up. But then they were told she was sick, so they put her on the couch, which is a nice thing to do. I understand. But I think that what's really important to look at here is that it is a qualified immunity issue. And so going back to the point that Judge Cudahy raised, we have to look at would a reasonable police officer, once they get into the house, which, again, it's undisputed that that has all been approved, once they conduct the probation search, is it reasonable for a police officer to believe that the law that governs search warrants would apply equally to a probation search? They both have the force of the law behind them. And so the question is, would a reasonable officer understand even the nuances between the difference of a probation search order versus a warrant order? And, in fact, even today they would if they were properly trained. Well, even today, there's not a case law that specifically addresses the issue of detaining third-party residents in the course of a probation search. There's plenty of case law that talks about detaining residents in the course of a search warrant or an arrest warrant, and that is the most analogous situation. But there is no case law out there addressing directly the probation search. And so these officers reasonably have qualified immunity. But, you know, if you've got a search warrant, a judge has looked at it at least and made that determination. But we look at it through the eyes of a reasonable police officer, and a judge has approved the probation search condition, and Eva knew about this probation search condition. So the judge approved it that Oscar's residence, which was the approved residence was Eva's house. You're talking about the trial judge. The trial judge. Okay. So for the purposes of what the police officers knew when they went into that house, they have an order from a judge authorizing them to enter the house and conduct the probation search. So for purposes of the court. Don't say they had an order from a judge. You make it sound as if they had an order before they went in there. Well, in other words, they knew about the probation they knew the probation condition, and they were doing their probation search. And so for purposes of what the police officers believed at that time, first of all, when did they make the determination that they were going to go into that house? Again, I'm not. When did they make the determination? They had done, I believe it was days before or even that morning, they had a list of probationers and they narrowed it down to repeat offenders who had committed robberies. And in that narrowed down list was Oscar Sanchez. Yeah. And that's pretty broad, huh? Well, there were eight people left on the list. And they all lived close to the area where all these robberies had been taking place. So again, that issue really is not disputed here. It's not even disputed by appellees. So they are legally in the house. The issue is only whether or not they could have asked the occupants. You're over your time. All right. Thank you, Your Honor. Thank you. Good morning, Your Honor. May it please the Court. Your name for the record? I'm Marian Yagman. Name for the record. Marian Yagman for the plaintiffs' appellees. Do you agree with Ms. Bach that with respect to qualified immunity, that the circumstances of having parole search and entering the home are not before us? They're not before the Court, Your Honor, because the district court granted qualified immunity as to that. Correct. And you can only And you didn't cross it, did you? No, because it was our understanding that an interlocutory qualified immunity is just limited to that particular allegation, not with claim, not with respect to So the only thing we're here to discuss is the seizure or detention of the occupants of the dwelling, correct? That's correct. And would you agree that it's fundamental Fourth Circuit, I mean, Fourth Amendment law, that when officers are executing a warrant or a parole search, that they have the right, indeed, the duty to separate occupants of the dwelling while they conduct the search? No, I do not agree with that. Well, suppose they'd ask them to stand in the kitchen. Would that have been unauthorized as well? Well, let's have a look at what really happened here as opposed to a hypothetical question. Well, ask her a question. Well, I think that, first of all, that would be less It would still be a detention because they're not free to leave. The issue is how long were they detained? Well, there's a detention here. I don't There seems to be some argument about that, but I think you can assume that. But why is that unauthorized? In this particular instance, you didn't have people You had, first of all, regardless of whether they had a right to come in or not, they'd gone in there, they'd been told the person in question was in prison. So what did they do? Well, we're beyond that. Well. We're beyond that. Right. And so what did they do? The district judge said, gave them qualified immunity for the entry for their probable cause for their being there. We're here to talk about the detention, and like Judge Cudahy, I'm prepared to concede for the purposes of this appeal that they were, in fact, detained. A, what's unreasonable about that? And B, what's the clearly established law that said they shouldn't have done that? It's not that they shouldn't have been there. It's the question is what should they have done with respect to the plaintiffs, and that is that they shouldn't have detained them for as long as they did. They left them outside at 6 o'clock in the morning, which is a nighttime search. If they'd had a search warrant, and they actually made them go outside, they were not free to leave. It was a long, unreasonable period of time. Well, there's been a lot of talk about it was cold outside. What's the evidence of what the temperature was when they were standing outside? Well, I don't think the sun's up at 6 o'clock, Your Honor. Hmm? The sun isn't up at 6 o'clock in the morning. Well, I realize that, but this is Los Angeles and not Chicago. It's December. It's also December, Your Honor. I don't know what the temperature is. When those officers came in, they sold those people, the one of the persons, the old lady was very sick with cancer, recovering from it. Oh, they left her inside, didn't they? The two women who were taking care of her were summarily made to go outside. There was no reason for that. I was trying to narrow this down to what it is. Okay. So there was a detention. Your contention is the methods used in the detention and the circumstances of the detention, including its length and where they were placed, are squarely before us and, in your opinion, should not provide for qualified immunity, right? Correct. Now, are those all fact questions? I believe they are, yes. Okay. Do we have jurisdiction over a question of fact related to qualified immunity under Johnson v. Jones? My understanding is that if there is a factual inquiry, that you do not, because that's for the jury to decide. Then why are we here? Your Honor, I didn't take the appeal. You know, that's why. So is it your position we don't have jurisdiction? It's my position you don't, because it is a fact. It is a fact. In fact, finding inquiry, there is this Rantelli case that just came that the, I believe that's, I don't have any time left, but the Rantelli case, I believe, discussed detentions in the context of a search warrant and held that for two to four minutes it was okay. So, but they didn't go further than that. So I'd argue against the Supreme Court taking into account the Supreme Court case of Rantelli, that in this case, you have a much longer period of time, much more Well, how long was the period of detention? Well, you have to look at, like Miss Favreau, the plaintiff, there was a 45-minute detention. Yeah. And outside, outside. My intention is that this detention lasted an unreasonable long time and it was too cold, right? Unreasonable circumstances. And is there, what's the evidence of the people were uncomfortably cold outside? I think a jury could infer that from the date and time. Well, what's the evidence before the jury? Well, I believe there was a declaration which the court, district court, didn't pay any attention to because it was in English. So, you know, that's also whether or not that's the principles also before the court. Even if, and I think there's some evidence in those declarations, that they weren't they were still wearing night clothing. And at 6 o'clock in the morning here, regardless of where your honor comes from, and I know it's freezing there in December, at 6 o'clock in the morning here, it's also cold, especially in December. So what you have here is a very, and you also have this little boy who's shoved outside. So they're all subjected to very arbitrary behavior for a long time. If they told them to stand in the kitchen, that would have been all right. I don't think it would have been all right either. They shouldn't have been separated from the lady. The length of time is unreasonable. Why was it such a long period of time? It was because they didn't want to check, which they could have, that they didn't want to confirm that Oscar Sanchez was in prison. And the reason they didn't want to do that is because they wanted to search the house and see if there were some guns there. And that's why they didn't take the reasonable step, which they could have done, because they were on notice of checking that he was in prison and they wouldn't have needed to have searched or they wouldn't have had any basis to search at all or to detain the people. Was there some testimony by one of the officers that they had no access to state prison records? That information was not available to them? I believe they said that, Your Honor, but it's incomprehensible when somebody like myself can pull up and find out very easily that they don't have direct information from the state. It would just be incomprehensible. Well, how do you do it now? I just, there's a special number, and I'm sure they have a different number, but it has a special number, a 916 number. Oh, to call up state prison. You just call them up. You get the name of the person, the number, and you can find out. I thought maybe you had a secret way of pulling up a rap sheet. No, I'm not law enforcement, Your Honor. Well, I don't know. Thank you, Your Honor. All right. Thank you. If I could, Your Honors, I would like to just momentarily address that last one. Let me ask this question. Do you agree that this is a fact question? Absolutely not. There's no factual dispute here. And one of the reasons why is because my entire appeal as to whether the length of the detention was reasonable or unreasonable. Well, the length of the detention was left open by the district court. But let me answer your question by the fact that there is evidence in the record that it was 45 minutes. Here's the key, though, on that. Was there evidence in the record that it was 45 minutes? One of the plaintiffs, Eva Sanchez, did estimate that it was 45 minutes. Okay. So however. And you feel it was shorter? Excuse me. I'm sorry. You feel it was shorter? It absolutely was shorter. Excuse me. Is there evidence in the record to suggest that it was shorter? Yes, there is. So we have a question of fact. Well, we don't because on this appeal I'm assuming the worst-case scenario for us, the absolute worst fact, which is what is the longest period that was alleged, and that's Eva's allegation that it was 45 minutes. But here is really the gut, these are the guts of the appeal, which is that it's not how much time was taken, it's what was done in that time. And one thing that is absolutely missing here is any allegation of anything that was done that was not strictly necessary for the probation search. There is no allegation here that the officers did anything harassing or unnecessary to complete their task. Well, how big was this house? What's the size of the house? That's not on the record. But the officers, the point is that they came into the house. How many bedrooms? I don't know. I believe there was two. Is there any question? Reuben was in one. Is there any question of law before us? There is an absolute question of law, which is the absence of legal analysis by the district court, in that she found it attentional. Now, is there a legal question before us? The legal question is, was there clearly established law that would have instructed these police officers to do anything different than what they did during the detention search? And the answer to that is not. What were the elements of temperature? The temperature outside. That, again, is not on the record at all. But I would like to direct your honors to you. Why don't we let the Weather Bureau and find out how cold it was on this day? Well, it was not our – for one, it was not our burden, but it was – It's not in the record. It's not in the record that I am aware of. I would like to direct your honors, though, to the record at page 298 to 299. It's a matter that can come into the record by introducing a newspaper. Into the record on appeal, your honor? Yeah. Not on appeal, but in the trial court. Well, I don't think that that's necessary because, again, the point is, not the specific length of time. There's no magic barometer. If you keep – if you're detained for X number of minutes, you're legal. X number of – Y number of minutes, you're not legal. That's just not – what the issue is, is did the police officers do anything that was harassing, intimidating, unnecessary to their probation search? There's absolutely nothing in the record. If anything, we have the one officer staying with the elderly mother on the couch and consoling her, talking to her, having a – there was – there's absolutely nothing here that's inappropriate. And I wanted to direct your honors to page 298 to 299 because that is the district court decision in which she found that the search was, in fact, legal. And part of the reason for finding that the search was legal and valid was that there is – the plaintiffs have failed to articulate any actions by defendants that would support a finding that defendants acted unreasonably during the search. And then she goes on to all the factors for that. There's no allegation that the police threatened or touched. There's no – they didn't even particularly look or damage the house in any way. The Rotelli case that I cited in my 28J letter, it's a U.S. Supreme Court case. In that case, the – Kennedy, your time is up. I'm sorry.  All right. Thank you, Your Honor. Thank you. All right. We'll call the next item on the calendar. Gary Willis. Oh, that's – we've got another one here. Gary Willis v. Diane Mora.
judges: Pregerson, Hawkins, Cudahy